UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X   Case No.
WOODY WILLIAMS, III,

                            Plaintiff,                              **COMPLAINT**

    - against -

                                                                 **PLAINTIFF DEMANDS**
                                                                 **A TRIAL BY JURY**

THE CITY OF NEW YORK, GREGORY MACKE,
*Individually,* and KEVIN MALONEY, *Individually,*

                            Defendants.
----------------------------------------------------------------X

       Plaintiff, WOODY WILLIAMS, III, by his attorneys, PHILLIPS & ASSOCIATES, Attorneys at Law, PLLC, hereby complains of the Defendants, upon information and belief, as follows:

## NATURE OF THE CASE

1. Plaintiff WOODY WILLIAMS, III, complains pursuant to 42 U.S.C. Section 1981 and the New York City Human Rights Law, New York City Administrative Code § 8-107 *et seq.*, seeking to redress the injuries he has suffered as a result of being subjected to discrimination based on his race (Black) and retaliation for complaining about said discrimination.

## JURISDICTION

2. Jurisdiction of this action is conferred upon the Court pursuant to 42 U.S.C. § 1981.

3. The Court has jurisdiction pursuant to 28 U.S.C. § 1331, § 1343, and supplemental jurisdiction over Plaintiff's city law claims pursuant to § 1367.

4. Venue is proper in this district based upon the fact that a substantial part of the events giving rise to the claim occurred within the Eastern District of New York.

## PARTIES

5. Plaintiff WOODY WILLIAMS, III, (hereinafter "WILLIAMS") is a resident of the State of New York, County of Queens.

6. Defendant THE CITY OF NEW YORK (hereinafter "CITY") is a municipal corporation duly organized and existing under the laws, statutes and charters of the State of New York.

7. The New York City Police Department (hereinafter "NYPD") is an agency of Defendant CITY.

8. At all times material, Defendant CITY operated, maintained, controlled and supervised NYPD, as a police department of Defendant CITY.

9. At all times material, Plaintiff WILLIAMS, as a Police Officer for the NYPD, was an employee of Defendant CITY.

10. At all times material, Defendant CAPTAIN GREGORY MACKE (hereinafter "MACKE") was an employee of Defendant CITY, holding the position of "Captain" in Defendant CITY's Precinct 104.

11. At all times material, Defendant MACKE was Plaintiff WILLIAMS' supervisor and/or held supervisory authority over Plaintiff WILLIAMS. Defendant has the authority to hire, terminate, and/or affect the terms and conditions of Plaintiff's employment.

12. At all times material, Defendant KEVIN MALONEY (hereinafter "MALONEY") was an employee of Defendant CITY, holding the position of "Deputy Inspector."

13. At all times material, Defendant MALONEY was Plaintiff WILLIAMS' supervisor and/or held supervisory authority over Plaintiff WILLIAMS. Defendant has the authority to hire, terminate, and/or affect the terms and conditions of Plaintiff's employment.

14. Defendants CITY, MACKE and MALONEY are herein collectively referred to as the "Defendants."

## MATERIAL FACTS

15. On or about January 10, 2005, Plaintiff WILLIAMS commenced his employment with Defendants as a "Police Officer." Plaintiff's salary is approximately $100,000.00 per year.

16. Upon information and belief, Plaintiff WILLIAMS' performance during his employment with Defendants has been exemplary.

17. On or about September 27, 2015, while Plaintiff WILLIAMS was on duty guarding Precinct 110, Defendant MACKE, Precinct 104's Captain, approached Plaintiff WILLIAMS while Plaintiff was removing his cellphone from one of his pockets, to place it into his other pocket. Plaintiff WILLIAMS respectfully greeted Defendant MACKE. However, Defendant MACKE ignored Plaintiff and, as he passed Plaintiff on his way to entering the Precinct, he accused Plaintiff of using his cellphone.

18. A few moments later, as Defendant MACKE exited Precinct 110, he approached Plaintiff WILLIAMS once again and demanded Plaintiff's department memo book. Next, Defendant MACKE ordered Plaintiff to accompany him to the Precinct 110 Captain's office.

19. Once Defendant MACKE and Plaintiff WILLIAMS entered the office, Defendant MACKE again demanded Plaintiff's department book, where he noted that Plaintiff had used his cellphone while on duty and did not have a note [shaving waiver] on him for his facial hair. However, Plaintiff WILLIAMS was not using his cellphone when Defendant MACKE approached him; he was merely relocating it. Furthermore, while Plaintiff did

3

not have his shaving waver on him, Plaintiff was not unshaven.

20. Then, Defendant MACKE ordered Sergeant Michelle Pacheco to get "two pieces of green paper" referring to papers used to memorialize disciplinary measures by Defendant CITY, known as "command discipline" ("CD"). As Sergeant Pacheco handed Defendant MACKE the CDs, she informed him that Captain Forgione, the Captain for Precinct 110, was working that day. However, Defendant MACKE ignored Sergeant Pacheco and in a very loud and aggravated voice yelled to Plaintiff WILLIAMS, "Get back on post, officer!"

21. In compliance with Defendant MACKE's order, Plaintiff WILLIAMS returned to his post.

22. Soon thereafter, Defendant MACKE exited Precinct 110, holding two CDs in his hand. As he passed Plaintiff, Defendant MACKE said to Plaintiff, "Fucking nigger!"

23. Offended and humiliated, Plaintiff WILLIAMS asked Defendant MACKE, "Did you call me a nigger?" Defendant MACKE responded, "What did you say, officer?" Plaintiff WILLIAMS repeated, "Did you call me a nigger?" Upon information and belief, Sergeant Pacheco heard Plaintiff's question to Defendant MACKE. Defendant MACKE did not respond.

24. Around 10:00 a.m., Captain Forgione returned to Precinct 110. Plaintiff WILLIAMS complained to Captain Forgione about the derogatory racial remark by Defendant MACKE. Captain Forgione informed Plaintiff WILLIAMS that he was going to investigate and get back to him.

25. About fifteen minutes later, Captain Forgione informed Plaintiff WILLIAMS that Defendant MACKE was in the process of suspending or modifying Plaintiff.

4

Modification consisted of desk duty.  Suspension, which denoted Plaintiff's removal from duty, seemed entirely unwarranted to Plaintiff, since, according to Defendant CITY's policy, failure to shave and cellphone use, even if true, are not grounds for suspension.

26. Nonetheless, while Plaintiff WILLIAMS and Captain Forgione spoke, according to Captain Forgione, Defendant MACKE was on the phone with the Deputy Inspector, Defendant MACKE's supervisor, discussing disciplinary action against Plaintiff.  Captain Forgione added that he would speak to Defendant MACKE about giving Plaintiff only a modification or CDs.  However, Plaintiff WILLIAMS expressed to Captain Forgione that he was still puzzled as to how he would be reprimanded by Defendants at all, without an investigation into his alleged infractions.  Plaintiff WILLIAMS added that he believed that his work status was in jeopardy solely due to Plaintiff's objection to Defendant MACKE's use of a racial epithet.  Captain Forgione replied that he would contact CITY's Office of Equal Employment Opportunity ("OEEO") the next morning and arrange for Plaintiff WILLIAMS to speak with the OEEO.

27. Later that morning, the Deputy Inspector, Defendant MALONEY, arrived at Precinct 110 to question Plaintiff WILLIAMS regarding Defendant MACKE's allegation in an interrogatory process referred to as a "G.O. 15."

28. Plaintiff WILLIAMS' supervisors did not inform Plaintiff that he had a right to be represented during the G.O. 15.  Instead, one of the officers with whom Plaintiff worked advised him to call a union representative.  Plaintiff WILLIAMS called his union, Patrolmen's Benevolent Association ("PBA"), and spoke with union representatives, Police Officer Ray Salamone and Police Officer Ferdinand Rodriguez.

29. The G.O. 15 process began that afternoon. Defendant MALONEY, Captain Forgione, Sergeant Maloney from Queens North Investigations and Officer Toll, questioned plaintiff WILLIAMS. Plaintiff WILLIAMS was represented by the aforementioned PBA representatives and the PBA's attorney, Chris Jevane. After the interrogation, Mr. Jevane informed Plaintiff WILLIAMS that he did not believe his duty status would change. According to Mr. Jevane, Plaintiff would most likely be reprimanded with two CDs.

30. Subsequently, however, PBA representative, Officer Salamone, informed Plaintiff that the Chief of Police had been contacted regarding Plaintiff WILLIAMS and he would most likely be suspended.

31. A few hours later, PBA representative, Officer Rodriguez contacted Plaintiff WILLIAMS and informed him that he needed to return his service weapon, off-duty weapon, police identification card and shield.

32. Soon thereafter, Defendant MALONEY informed Plaintiff WILLIAMS that following Defendants' investigation, Plaintiff was being suspended, without pay.

33. On or about September 27, 2015, Defendants suspended Plaintiff WILLIAMS without pay, for 30 days, the maximum amount of time permitted for suspensions. The suspension was allegedly for using a cellphone while on duty and working unshaven. However, the allegations were baseless. In fact, the suspension was motivated by Plaintiff's objection to racial discrimination by Defendant MACKE.

34. In further retaliation for his complaint of race discrimination, upon Plaintiff's return to work, on or about October 27, 2015, Plaintiff was demoted by being placed on desk duty.

35. Plaintiff WILLIAMS has been unlawfully discriminated against, humiliated, degraded, and victimized due to the above discriminatory conduct by Defendants.

36. As a result, Plaintiff WILLIAMS has suffered significant emotional and physical distress and financial loss.

37. The discriminatory and retaliatory treatment to which Defendants have subjected Plaintiff WILLIAMS, including by suspending him without pay, issuing him two CDs, and demoting him to desk duty, will continue to negatively impact Plaintiff's career with Defendant CITY, as his record, reflecting such disciplinary acts, will prevent him from being promoted to higher-ranking positions.

38. Plaintiff WILLIAMS was subjected to retaliation by Defendants because he engaged in a protected activity by opposing and objecting to race discrimination.

39. Defendants' actions and conduct were intentional and intended to harm Plaintiff WILLIAMS.

40. As a result of the acts and conduct complained of herein, Plaintiff WILLIAMS has suffered and will continue to suffer the loss of income, promotion, the loss of a salary, bonuses, benefits and other compensation which stem directly from his employment with Defendants. Plaintiff WILLIAMS has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff has further experienced emotional and physical distress.

41. Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law. As such, Plaintiff WILLIAMS demands punitive damages as against all the Defendants, jointly and severally.

## AS A FIRST CAUSE OF ACTION
## FOR DISCRIMINATION UNDER 42 U.S.C. § 1981

42. Plaintiff WILLIAMS repeats and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

43. 42 USC § 1981 states in relevant part as follows:

   (a) Statement of equal rights

   All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

   (b) "Make and enforce contracts" defined
   For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

44. Defendant CITY violated the above section as set forth herein.

## AS A SECOND CAUSE OF ACTION
## FOR RETALIATION UNDER 42 U.S.C. § 1981

45. Plaintiff WILLIAMS repeats and realleges each and every paragraph above as if said paragraph was more fully set forth herein at length.

46. By the acts and practices described above, Defendants retaliated against Plaintiff for his opposition to unlawful discrimination under 42 U.S.C. § 1981.

47. Defendant CITY acted with malice and/or reckless indifference to Plaintiff's statutorily protected rights.

48. As a result of Defendant's discriminatory acts, Plaintiff WILLIAMS has suffered and will continue to suffer irreparable injury, emotional distress, and other compensable damage unless and until this Court grants relief.

## AS A THIRD CAUSE OF ACTION FOR DISCRIMINATION
## UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

49. Plaintiff WILLIAMS repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

8

50. The Administrative Code of City of NY § 8-107 [1] provides that "It shall be an unlawful discriminatory practice: "(a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

51. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, § 8-107(1)(a) by creating and maintaining discriminatory working conditions, and otherwise discriminating against the Plaintiff because of his race.

### AS A FOURTH CAUSE OF ACTION FOR RETALIATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

52. Plaintiff WILLIAMS repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

53. The New York City Administrative Code § 8-107(7) provides that it shall be unlawful discriminatory practice: "For an employer . . . to discriminate against any person because such person has opposed any practices forbidden under this chapter. . ."

54. Defendant CITY engaged in an unlawful discriminatory practice in violation of New York City Administrative Code § 8-107(7) by discriminating against Plaintiff WILLIAMS because of Plaintiff's opposition to the unlawful employment practices of the Defendants.

### AS A FIFTH CAUSE OF ACTION FOR DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE (Against Individual Defendants)

55. Plaintiff WILLIAMS repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

9

56. The New York City Administrative Code § 8-107(6) provides that it shall be unlawful discriminatory practice: "For any person to aid, abet, incite, compel; or coerce the doing of any of the acts forbidden under this chapter, or attempt to do so."

57. Defendants MACKE and MALONEY engaged in an unlawful discriminatory practice in violation of New York City Administrative Code § 8-107(6) by aiding, abetting, inciting, compelling and coercing the above discriminatory, unlawful and retaliatory conduct.

### AS A SIXTH CAUSE OF ACTION FOR DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

58. Plaintiff WILLIAMS repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

59. New York City Administrative Code Title 8-107(13) Employer liability for discriminatory conduct by employee, agent or independent contractor.

    a. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of any provision of this section other than subdivisions one and two of this section.

    b. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of subdivision one or two of this section only where: (1) the employee or agent exercised managerial or supervisory responsibility; or (2) the employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or

(3) the employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct.

c. An employer shall be liable for an unlawful discriminatory practice committed by a person employed as an independent contractor, other than an agent of such employer, to carry out work in furtherance of the employer's business enterprise only where such discriminatory conduct was committed in the course of such employment and the employer had actual knowledge of and acquiesced in such conduct.

60. Defendant CITY violated the above section as set forth herein.

## JURY DEMAND

Plaintiff hereby requests a jury trial.

**WHEREFORE**, Plaintiff WILLIAMS respectfully requests a judgment against the Defendants, individually, jointly, and severally:

A. Declaring that the Defendants engaged in unlawful employment practice prohibited by 42 U.S.C. Section 1981, and the New York City Administrative Code § 8-107, *et seq.*, and that Defendants discriminated against Plaintiff WILLIAMS because of his race and retaliated against him for complaining of such discrimination;

B. Awarding damages to Plaintiff WILLIAMS resulting from Defendants' unlawful employment practices and conduct, and to otherwise make Plaintiff whole for any losses suffered as a result of such unlawful employment practices;

C. Awarding Plaintiff WILLIAMS compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to reputation;

D. Awarding Plaintiff WILLIAMS punitive damages;

E. Awarding Plaintiff WILLIAMS attorney's fees, costs, and expenses incurred in the prosecution of this action; and

F. Awarding Plaintiff WILLIAMS such other and further relief as the Court may deem equitable, just and proper to remedy the Defendants' unlawful employment practices.

Dated: New York, New York
December 4, 2015

PHILLIPS & ASSOCIATES,
ATTORNEYS AT LAW, PLLC

By: _____
Joshua P. Frank, Esq.
Dorina Cela, Esq.
*Attorneys for Plaintiff*
45 Broadway, Suite 620
New York, New York 10006
(212) 248-7431
jfrank@tpglaws.com
dcela@tpglaws.com

12