```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------  X
                                                            :
WOODY WILLIAMS III,                                         :   **MEMORANDUM DECISION
                                                            :   AND ORDER**
                              Plaintiff,                    :
                                                            :   15 Civ. 6900 (BMC)
              - against -                                   :
                                                            :
THE CITY OF NEW YORK; GREGORY                               :
MACKIE; and KEVIN MALONEY,                                  :
                                                            :
                              Defendants.                   :
----------------------------------------------------------  X
```

**COGAN**, District Judge.

This is an employment discrimination case brought by a police officer primarily under the New York City Human Rights Law ("NYCHRL"). Of the five remaining claims for relief in the complaint, the federal jurisdictional "hook" is that one of those five is brought against the City of New York, but only against the City of New York, under 42 U.S.C. § 1981. The other four claims for relief are all under the NYCHRL against either the City, or the two supervisors who plaintiff contends acted against him, or both the City and the two supervisors.

Defendants have moved for summary judgment. Plaintiff's claim against the City under 42 U.S.C. § 1981 fails under Monell v. Department of Social Services, 436 U.S. 658, 98 S. Ct. 2018 (1978). I decline to exercise supplemental jurisdiction over the remaining claims and dismiss those without prejudice to their pursuit in state court.

**BACKGROUND**

The facts, viewed most favorably to plaintiff, can be simply stated.

On the day in question, plaintiff was on security duty at the 110th precinct house. He had no prior knowledge of or relationship with defendant Captain Mackie[1] when they became engaged in an escalating verbal altercation. The altercation began when plaintiff was standing outside the precinct house. Capt. Mackie approached him and observed plaintiff holding his personal cellphone and told plaintiff to put it away, apparently because use of a personal cellphone while on security duty is prohibited. (Plaintiff denies he was using the cellphone, and asserts that he was just moving it from one pocket to another.) Capt. Mackie then continued to enter the precinct house. A few minutes later, as he exited, he told plaintiff that he wanted to inspect his memo book.

It is undisputed that plaintiff had failed to update his memo book, as is required, and when Capt. Mackie directed plaintiff to hand it over, plaintiff began making an entry to try to remedy the deficiency. It is also undisputed that Capt. Mackie asked plaintiff if he had a waiver to be excused from shaving, and that plaintiff replied that he did not. It is disputed as to whether plaintiff was properly shaven; plaintiff claims that he was, and Capt. Mackie claims that he was not. When plaintiff turned over his memo book to Capt. Mackie, Capt. Mackie wrote in it that plaintiff was "disciplined for being inattentive while on station house security post (on cellphone), not having timely memo book entries, and for not having a note on him for facial hair."

---

[1] The Clerk is directed to amend the docket sheet to correct the spelling of Captain Mackie's name as set forth in the caption above.

2

According to plaintiff, as Capt. Mackie passed him while walking out of the station house, he called plaintiff a racial slur prefaced by an obscene adjective.  Plaintiff inquired incredulously of Capt. Mackie whether he had indeed used a racial slur in referring to him.  Capt. Mackie responded, "What did you just say, officer?"  Plaintiff then asked the question again.  Capt. Mackie turned and walked back into the station house, red-faced.

What happened next happened quickly.  Although disputing that he had used an obscenity and racial slur when he passed by plaintiff, Capt. Mackie then acknowledges that he immediately took three actions in response to plaintiff's questioning him if he had.  First, he had a conversation with the executive officer of the precinct, who was plaintiff's supervisor, Capt. Ralph Forgione.  Second, Capt. Mackie called the NYPD's Office of Equal Employment Opportunity ("OEEO"), and because it was a Sunday and that office was closed, he left a voicemail message describing what had happened.  Third, Capt. Mackie called the NYPD borough office and notified them of the incident.

That same day, in response to Capt. Mackie's call, the borough office dispatched an investigation team led by defendant Inspector Maloney, who was acquainted with Capt. Mackie from prior investigations and, on the day in question, was Capt. Mackie's direct supervisor. Inspector Maloney spoke privately with Capt. Mackie and separately with Capt. Forgione before commencing the formal hearing.  He then conducted a recorded, formal hearing in conjunction with Capt. Forgione, at which plaintiff and his union representative were present.  When plaintiff was examined as part of that hearing, Capt. Forgione asked most of the questions.  A witness to some of the exchange between plaintiff and Capt. Mackie, named Sgt. Pacheco, was questioned at the hearing by Inspector Maloney, Capt. Forgione, Capt. Mackie, and another sergeant, Sgt.

3

Toth. Capt. Mackie was not interviewed as part of the formal hearing; he was informally interviewed by another sergeant.

The report of the investigation, although signed by Inspector Maloney, was based on Capt. Forgione's informal interview of Capt. Mackie and was generated by Capt. Forgione. After Inspector Maloney reported his findings up the chain of command, Inspector Maloney told plaintiff that same day that he was suspended for 30 days and that charges and specifications would be issued. Following plaintiff's 30-day suspension, he was issued Charges and Specifications alleging that he was discourteous to Capt. Mackie and Inspector Maloney; that he failed to comply with an order to cease using his cellphone; that he failed to maintain his memo book; and that he was unshaven while in uniform. Plaintiff was placed on modified duty where he has remained at least as of the time of defendants' motion for summary judgment.

It is plaintiff's theory of the case that defendants Mackie and Maloney got together and conspired to bring charges against plaintiff to cover up and retaliate against plaintiff's protest of Mackie's use of a racial slur against him. The complaint contains five claims for relief: (1) against the City of New York under 42 U.S.C. § 1981 for retaliating against plaintiff for opposing unlawful discrimination; (2) against all defendants (the City, Maloney, and Mackie) under the NYCHRL § 8-107(1) by creating and maintaining discriminatory working conditions based on plaintiff's race; (3) against the City under NYCHRL § 8-107(7) for discriminating against plaintiff for opposing an unlawful employment practice; (4) against Mackie and Maloney under NYCHRL § 8-107(6) for aiding and abetting unlawful and retaliatory conduct; and (5) against the City under NYCHRL § 8-107(13) for knowingly allowing discriminatory conduct. [2]

---

[2] The complaint's first claim for relief alleged a hostile work environment under 42 U.S.C. § 1981. In response to defendants' motion for summary judgment, plaintiff voluntarily withdrew that claim.

4

## DISCUSSION

### I

The requirements for imposing municipal liability under 42 U.S.C. § 1983 are the same as those applicable to claims brought against municipalities under 42 U.S.C. § 1981. See Daughtry v. City of New York, No. 12 Civ. 2655, 2015 WL 2454115, at *8 (E.D.N.Y. Feb. 23, 2015) ("Case law suggests that courts resolve §§ 1981 and 1983 claims under the same substantive standards, although they might frame the analysis differently") (collecting cases); Carmody v. Village of Rockville Ctr., 661 F. Supp. 2d 299, 330 (E.D.N.Y. 2009) (claims of discrimination and retaliation under Section 1981 employ "the same standard for prevailing on a claim of municipal liability under Section 1983, also known as a Monell claim"). Under Monell, 436 U.S. at 690-91, 98 S. Ct. at 2036, a municipality will not be liable under § 1983 unless the violation of plaintiff's constitutional rights is caused by a governmental custom, policy, or usage of the municipality. See also Connick v. Thompson, — U.S. —, 131 S. Ct. 1350, 1359 (2011) (municipalities can be held liable for "practices so persistent and widespread as to practically have the force of law"). Absent such a custom, policy, or usage, a municipality cannot be held liable on a respondeat superior basis for the tort of its employee. Monell, 436 U.S. at 691, 98 S. Ct. at 2036; Connick, 131 S. Ct. at 1359 (citing Monell, 436 U.S. at 691, 98 S. Ct. at 2036); see also Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown, 520 U.S. 397, 404, 117 S. Ct. 1382, 1388 (1997) ("[I]t is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged.").

Here, plaintiff's complaint does not even make the familiar conclusory allegations of a custom, policy, or usage in an attempt to state a § 1981 claim against the City, let alone set forth

factual allegations that would suggest a plausible basis for imposing such liability. All it does is allege a single incident in which two City employees conspired to retaliate against him. That is a fine claim of respondeat superior, but it has nothing to do with <u>Monell</u>. Nevertheless, we are past the pleading stage, and defendants never challenged the adequacy of the complaint, and thus the question is whether plaintiff has adduced evidence to show, at least, a factual issue as to whether the City has an unconstitutional policy, practice, or usage that led to his injury.

Plaintiff's theory of <u>Monell</u> liability is first disclosed in opposition to defendants' motion for summary judgment. It is based on a provision of the NYPD's Equal Employment Opportunity Policy, which states, in part:

> When charges and specifications are pending or preferred against a member of the service, an allegation of discriminatory treatment raised as a defense to the charges by the respondent member of the service shall vest in the exclusive jurisdiction of the Deputy Commissioner [of] Trials until the charges and specifications have been resolved. After the charges and specifications have been resolved, jurisdiction over the allegation of the employment discrimination shall be assumed by the DCEEO upon the request of the affected party.

In other words, plaintiff contends that it violates his civil rights to have to await the outcome of his disciplinary proceedings before the OEEO considers his complaint. However, plaintiff cites no authority for the proposition that a public employer cannot structure its disciplinary proceedings that include a defense of discrimination or retaliation to precede its human rights department investigation, and there are abundant reasons why the 14th Amendment does not place any such restrictions on it.

First, although a public employer may not adopt a policy that tolerates or encourages racial discrimination or retaliation for reporting it, nothing requires it to adopt an administrative mechanism for the resolution of employee complaints concerning

6

discrimination. Such a mechanism may be part of a defense in the Title VII context, see Faragher v. City of Boca Raton, 524 U.S. 775, 118 S. Ct. 2275 (1998); Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 118 S. Ct. 2257 (1998), but nothing in the Constitution requires it at all. Because the NYPD does not even have to have an OEEO, there is no constitutional prohibition in activating it after the disciplinary process is completed.

Second, the policy of which plaintiff complains does not apply to all discrimination and retaliation claims. It only applies to those claims raised as a defense to disciplinary charges that were initiated first. There are obviously sound reasons for structuring the administrative grievance process that way – an employee confronted with disciplinary charges could seek to derail or consume excessive resources by responding to disciplinary charges with a discrimination claim, and then demanding that both proceed concurrently or that the human resources investigation proceed to conclusion first. This would require two separate administrative proceedings within the employer to interview the same witnesses during overlapping investigations. By structuring the process to resolve the disciplinary proceeding first, and only when it is commenced first, conservation of resources is maintained without any compromise of the employee's right to be heard. Indeed, in the instant case, plaintiff never contacted the OEEO at all; it contacted him, in response to Capt. Mackie's voicemail. He can hardly complain that OEEO, pursuant to policy, awaited the outcome of the disciplinary proceeding before proceeding.

Finally, the record indicates that even when a disciplinary proceeding is commenced first, the OEEO is not entirely divested of jurisdiction; it continues to have

7

the ability to promote peace in the workplace by taking immediate remedial action to separate the disputing employees through reassignments or to provide other assistance to the offended employee.

Perhaps recognizing the lack of authority for the basis of his Monell claim against the City, plaintiff has also opposed defendants' motion on another basis: that he has a § 1981 claim individually against Mackie and Maloney. It has not deterred him that there is no such claim stated anywhere in the complaint. In effect, he has constructively amended his complaint, without leave of court, and without any notice to his adversary, after his adversary has completed discovery and moved for summary judgment on the complaint that plaintiff actually filed.

I am not inclined to allow this kind of backdoor amendment, and the case law does not favor it. See Greenidge v. Allstate Ins. Co., 446 F.3d 356, 361 (2d Cir. 2006); Syracuse Broad. Corp. v. Newhouse, 236 F.2d 522, 525 (2d Cir. 1956) (district court was "justified" in "brush[ing] aside" further argument not alleged in complaint but raised for first time in opposition to summary judgment); see also 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1183, at 23 n. 9 (3d ed. 2004) ("An opposition to a summary judgment motion is not the place for a plaintiff to raise new claims."). I recognize that it could be argued that plaintiff has already alleged a similar claim against Mackie and Maloney under the NYCHRL, but for several reasons, I do not think that is an adequate reason to deem the complaint amended *nunc pro tunc*.

First, the standard for recovery for an NYCHRL claim is different and more liberal than a § 1981 claim, see Fenner v. News Corp., No. 09 Civ. 9832, 2013 WL 6244156, at *12-13 (S.D.N.Y. Dec. 2, 2013). Defendants have been conducting discovery, planning their summary judgment motion, and very possibly evaluating settlement possibilities on the claims that

plaintiff pled, not on the claims he might have pled. They would have reasonably concluded that plaintiff was content with proceeding only on the NYCHRL claim as to individual liability because that was what was in the complaint.

Second, defendants briefed the issue of municipal liability under § 1981 in their moving papers. Even if plaintiff had moved for leave to amend to assert a § 1981 claim against the individuals, and that motion had been granted, the Court would almost certainly have required plaintiff to reimburse defendants for the attorneys' fees incurred as a result of plaintiff's new claim.

Third, as discussed below, it appears that the assertion of federal claims in this case was something of an afterthought. This was always a case where the federal law tail was waving the state law dog. There were originally two federal claims out of the six total claims; one, for hostile work environment, was frivolous, and plaintiff wisely withdrew it, and the other fails rather easily under Monell for the reasons described above. It appears that the only basis for asserting a § 1981 claim was to justify federal jurisdiction.

Fourth, the Supreme Court held in Jett v. Dallas Independent School Dist., 491 U.S. 701, 735, 109 S. Ct. 2702, 2723 (1989), that public employees cannot be liable under § 1981; their liability is only under § 1983, and even under his lately-raised theory, plaintiff has not referenced § 1983. Some cases have held that the amendments to § 1981 in 1991 have legislatively overruled Jett, see Fed'n of African Am. Contractors v. City of Oakland, 96 F.3d 1204, 1212 (9th Cir. 1996), but I am not going to delve into that issue given the back-handed way in which plaintiff has raised the individual defendants' liability under § 1981.

Finally, plaintiff will not be prejudiced by prohibiting his *post hoc* amendment. All relief to which he may be entitled can be obtained through his NYCHRL claims.

9

Accordingly, defendants' motion for summary judgment as to the § 1981 claim against the City is granted.

## II

Having dismissed the only claim upon which federal jurisdiction rests, I must consider whether to retain jurisdiction over plaintiff's remaining NYCHRL claims pursuant to the supplemental jurisdiction conferred by 28 U.S.C. § 1367. Under that statute, a district court "may decline to exercise supplemental jurisdiction" if it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). This requires balancing the "values of judicial economy, convenience, fairness, and comity," Carnegie–Mellon Univ. v. Cohill, 484 U.S. 343, 350, 108 S. Ct. 614, 619 (1988), in deciding whether to exercise jurisdiction. The Supreme Court has made it clear that once the discretion in § 1367(c)(3) is activated, "the balance of factors ... will point toward declining to exercise jurisdiction over the remaining state-law claims." Cohill, 484 U.S. at 350 n. 7, 108 S. Ct. at 619 n. 7; see also United Mine Workers v. Gibbs, 383 U.S. 715, 726, 86 S. Ct. 1130, 1139 (1966) ("Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law.... [I]f the federal law claims are dismissed before trial ... the state claims should be dismissed as well.").

There is nothing so unusual about this case as would compel the retention of supplemental jurisdiction. This is now an action solely under the NYCHRL, an ordinance passed by the New York City Council. There are no federal implications. I have not set a trial date or received pretrial submissions. The state court is literally one block away. The parties can walk over to it, refile revised pleadings and a note of issue as required by state law, and obtain a

reasonably prompt trial date. There is no reason why this state law case should not be tried in state court.

## CONCLUSION

Defendants' motion for summary judgment is granted to the extent of dismissing plaintiff's federal claim with prejudice. The Court declines to exercise supplemental jurisdiction over his remaining state law claims, and those claims are therefore dismissed without prejudice to recommencement in state court. The Clerk is directed to enter judgment accordingly.

**SO ORDERED.**

Digitally signed by Brian M. Cogan
_____
U.S.D.J.

Dated: Brooklyn, New York
September 21, 2016